# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT RYAN SHIRLEY,

          Plaintiff,

          v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

CIVIL ACTION NO. 3:21-cv-00455

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

In this matter, the plaintiff, Scott Ryan Shirley, seeks judicial review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I.   BACKGROUND

On April 23, 2019, Shirley protectively filed a claim for disability insurance benefits asserting a disability onset date of December 3, 2018. The claim was initially denied by state agency reviewers on June 27, 2019, and upon reconsideration on October 29, 2019. The plaintiff then

requested an administrative hearing.

A telephone hearing was subsequently held on April 29, 2020, before an administrative law judge, Richard E. Guida (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Paul Anderson. The plaintiff was represented by counsel at the hearing.

On May 7, 2020, the ALJ denied Shirley's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Shirley was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Shirley had not engaged in substantial gainful activity since his alleged disability onset date. At step two, the ALJ found that Shirley had the severe impairments of: degenerative disc disease, generalized anxiety disorder, post-traumatic stress disorder, disruptive/impulse control/conduct disorder, attention deficit and hyperactivity disorder, and mood disorder.

At step three, the ALJ found that Shirley did not have an impairment or combination of impairments that meets or medically

equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  In doing so, the ALJ considered Shirley's limitations in four broad functional areas as a result of his mental disorders, finding moderate limitations in three functional areas— (1) interacting with others, (2) concentrating, persisting, or maintaining pace, and (3) adapting or managing oneself—and mild limitations in the fourth area— understanding, remembering, or applying information.  *See generally* 20 C.F.R. § 404.1520a(c) (explaining functional limitation rating process for mental impairments; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(E) (explaining the four areas of mental functioning); *id*. § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments).

Between steps three and four of the sequential evaluation process, the ALJ assessed Shirley's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Shirley had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b),[1] with the following

---

[1] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

limitations:

> [T]he claimant can engage in occasional climbing of
> ramps, stairs, ladders, ropes, or scaffolds, balancing,
> stooping, kneeling, crouching, and crawling, and retains
> the capacity to perform simple, routine tasks, involving
> only simple, work-related decisions, and with few, if
> any, work-place changes, no production pace work, and
> only occasional interaction with supervisors, coworkers,
> and the public.

(Tr. 16).

In making these factual findings regarding Shirley's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304. The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 404.1520c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Shirley was capable of performing his past relevant work as a surveillance system monitor, DOT # 379.367-010, which was sedentary work as actually and generally performed. Based on this finding, the ALJ concluded that Shirley was not disabled for Social

Security purposes.[2]

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on January 12, 2021, making the ALJ's May 2020 decision the final decision of the Commissioner subject to judicial review by this court.

Shirley timely filed his complaint in this court on March 12, 2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.  DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding

---

[2] Although the ALJ found Shirley not disabled at step four, he also recorded an alternative finding that Shirley was capable of performing other jobs that exist in significant numbers in the national economy, which would in turn dictate a not-disabled finding at step five. Based on Shirley's age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Shirley was capable of performing the requirements of representative occupations such as assembler, small products, DOT # 706.684-022, bottling line attendant, DOT # 920.687-042, and bakery worker conveyor line, DOT # 524.687-022. *See* DICOT 706.684-022, 1991 WL 684347 ("assembler, small products"); DICOT 920.687-042, 1991 WL 687971 ("bottling-line attendant"); DICOT 524.687-022, 1991 WL 674781 ("bakery worker, conveyor line").

that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Shirley asserts on appeal that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly articulate the factor of consistency when evaluating the opinion of Michael Meketon, LCSW.

As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the

fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed his administrative claim for benefits in April 2019. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source

opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. § 404.1520c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 404.1520c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20

C.F.R. § 404.1520c(c)(1) (supportability), and *id.* § 404.1520c(c)(2) (consistency), *with id.* § 404.1527(c)(3) (supportability), and *id.* § 404.1527(c)(4) (consistency).[3] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 404.1520c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

---

[3] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

### A. Prior Administrative Findings

The ALJ considered the prior administrative findings in this case, denying the plaintiff's claim for disability initially in June 2019, and on reconsideration in October 2019.  The ALJ found the opinions by state agency medical and psychological consultants contained therein to be either "persuasive" or "partially persuasive." (Tr. 19-20.)

The prior administrative findings included the opinions of a state agency psychological consultant, Monica Yeater, Psy.D., recorded on June 20, 2019, who had found the claimant has a mild limitation in understanding, remembering, or applying information, and moderate limitations in interacting with others, in concentrating, persisting, or maintaining pace, and in adapting or managing oneself.  (Tr. 58).

Dr. Yeater found that:

> The claimant is capable of completing tasks within a typical schedule and at a consistent pace.  Claimant can make simple decisions.  The claimant is able to carry out very short and simple instructions.  The claimant would be able to maintain regular attendance and be punctual . . . .  The claimant is capable at asking simple questions and accepting instruction.  The claimant is able to maintain socially appropriate behavior . . . . The claimant can sustain an ordinary routine without special supervision . . . . The claimant can understand, retain, and follow simple instructions (i.e., perform one and two step tasks despite the limitations resulting from his impairment.

(Tr. 64-66).

In evaluating Dr. Yeater's opinions, the ALJ found that

> this opinion is supported by objective findings of intact recent and remote memory and normal thought processes and cognition yet is still consistent with the claimant's subjective allegations of having a hard time focusing or interacting with others. Accordingly, this opinion is persuasive.

(Tr. 19 (citations omitted)).

The prior administrative findings included the opinions of a state agency psychological consultant, John Gavazzi, Psy.D., recorded on October 9, 2019, who found that the claimant had a mild limitation in understanding, remembering, or applying information, and moderate limitations in interacting with others, in concentrating, persisting, or maintaining pace, and in adapting or managing oneself.  (Tr. 79).

Dr. Gavazzi found that:

> The claimant can make simple decisions.  The claimant would be able to maintain regular attendance and be punctual.  The claimant is able to carry out very short and simple instructions . . . . The claimant struggles with social skills.   The claimant communicates clearly, relates appropriately to familiar others, and behaves predictably in most social situations.  The claimant is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene . . . . Available data suggests that the

> claimant has adequate ability to respond to basis work
> setting changes.  The claimant appears to have adequate
> ability to take appropriate precautions in hazardous
> situations and utilize transportation.  The claimant has
> adequate ability to organize and set simple goals.

(Tr. 83-84).

In evaluating Dr. Gavazzi's opinions, the ALJ found that

> this opinion is supported by objective findings of intact
> cognition and memory, along with a normal mood and
> affect at treating visits, and is consistent with the
> claimant's indications that while he does avoid crowds,
> he is able to drive himself to and from places.
> Accordingly, this opinion is persuasive.

(Tr. 19 (citations omitted)).

The prior administrative findings included the opinions of a state

agency medical consultant, Jennifer B. Wilson, M.D., recorded on October

28, 2019, who found that the claimant is capable of lifting and carrying

up to 20 pounds occasionally and up to 10 pounds frequently.  Dr. Wilson

found that Shirley was capable of standing or walking for a total of about

six hours in an eight-hour workday.  Dr. Wilson found that Shirley was

capable of occasional climbing of ramps, stairs, ladders, ropes, or scaffolds,

and occasional balancing, stooping, kneeling, crouching, or crawling.  (Tr.

81).

In evaluating Dr. Wilson's opinions, the ALJ found that

> this opinion is supported by objective findings of intact lower extremity strength, a full range of motion in his lumbar spine, and negative straight leg raise tests, and is consistent with the claimant's indication that he performs his own activities of daily living, along with cleaning and cooking. Accordingly, this opinion is persuasive.

(Tr. 19 (citations omitted).)

The prior administrative findings included the opinions of a state agency medical consultant, L. Antone Raymundo, M.D., recorded on June 26, 2019, who found that the claimant is capable of lifting and carrying up to 50 pounds occasionally and up to 25 pounds frequently. Dr. Raymundo found that Shirley was capable of standing or walking for a total at about six hours in an eight-hour workday. Dr. Raymundo found that Shirley was capable of frequent balancing, stooping, and climbing of ramps or stairs, but only occasional climbing of ladders, ropes, or scaffolds. He found no limitations with respect to kneeling, crouching, or crawling. (Tr. 60-61).

In evaluating Dr. Raymundo's opinions, the ALJ found that,

> [w]hile the undersigned agrees with some of the postural limitations stated, in regards to the exertional limitations, the undersigned finds that this opinion does not consider the claimant's tenderness upon palpation of the lumbar and thoracic spin[e] during treating visits, and does not acknowledge the claimant's

> complaints of an exacerbation of pain upon heavy lifting or prolonged standing.  Accordingly, this opinion is partially persuasive.

(Tr. 20 (citations omitted).)

The plaintiff does not challenge the ALJ's evaluation of the opinions of Dr. Yeater, Dr. Gavazzi, Dr. Wilson, or Raymundo.

### 2.    Independent Consultative Examiner Opinion

On June 10, 2019, Shirley was seen and examined by an independent consultative examiner, Stacy Trognar, Psy.D.  Dr. Trognar observed that Shirley was cooperative and his manner of relating overall was adequate. He presented with appropriate dress, well groomed, normal posture and motor behavior, and appropriate eye contact.  She observed that Shirley's thought process was coherent and goal directed with no evidence of hallucinations, delusions, or paranoia.  His affect was "somewhat anxious" and he felt "nervous" and "uncomfortable" during the evaluation.  Dr. Trognar found that Shirley had clear sensorium and was oriented to person, place and time.  She found both his attention and concentration and his recent and remote memory skills to be "[m]ildly impaired due to anxiety and nervousness in the evaluation."  Dr. Trognar observed average cognitive functioning, good insight, and fair judgment.

She recorded a diagnosis of generalized anxiety disorder, posttraumatic stress disorder, unspecified disruptive, impulse control, and conduct disorder, and cannabis use disorder with a fair prognosis. (Tr. 494-96). Dr. Trognar also completed an agency form report on Shirley's ability to do work-related activities. Dr. Trognar opined that, as a result of anxiety, Shirley had mild limitations to his ability to understand, remember, and carry out complex instructions, and to his ability to make judgments on complex work-related decisions, but no limitations with respect to simple instructions or simple work-related decisions. She further opined that, as a result of anxiety, Shirley had moderate limitations to his ability to interact appropriately with supervisors, co-workers, and the public, and his ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 497-98).

In evaluating Dr. Trognar's opinions, the ALJ found that

> [w]hile [the] undersigned agrees with the moderate limitations stated, in regards to the other limitations, the undersigned finds that they are not limiting enough and do not take into consideration findings of impaired memory and attention during a June 2019 consultative examination. The undersigned also finds that they do not take into consideration the claimant's subjective complaints of having difficulty concentrating. For these reasons, this opinion is only partially persuasive.

(Tr. 19 (citations omitted.))

The plaintiff does not challenge the ALJ's evaluation of Dr. Trognar's opinion.

### 3.  Treating Counselor Opinion

On January 15, 2020, Shirley's treating counselor, Michael Meketon, LCSW, completed a mental impairment questionnaire. Meketon opined that Shirley had limitations to varying degrees that interfere with is ability to do work-related activities. Meketon found that Shirley had extreme limitations in his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms, his ability to interact with the general public, and his ability to use public transportation. Meketon found that Shirley had marked limitations in his ability to maintain attention for two hour segments; maintain regular attendance and be reasonably punctual; work in coordination with or proximity to others without undue distraction; perform at a consistent pace without unreasonable breaks; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; understand, remember, and carry out detailed instructions; and maintain socially

appropriate behavior.  Meketon found that Shirley had not more than mild or moderate limitations in performing various other work-related activities.  (Tr. 526-29).

Upon, review of Meketon's opinions, the ALJ found them "not persuasive."  The ALJ explained:

> Mr. Meketon's opinion of marked/extreme limitations is not supported by the above outlined treatment evidence and the consultative psychological examination by Dr. Trogner.  Also, mental status examinations by Mr. Meketon do not support marked/extreme limitations.  For example, on January 15, 2020, three days prior to his January 18, 2020 opinion,[4] Mr. Meketon noted in part: calm affect, no anxiety, normal speech tone, intact thought process.  In addition, the mental status examinations by treating psychiatry provider, Laura Hanes, CRNP, does not support marked/extreme limitations.

(Tr. 20 (citations omitted).)

The plaintiff challenges the ALJ's evaluation on the premise that, while the ALJ's written decision addressed the supportability of Meketon's opinion, it failed utterly to address the required factor of

---

[4] The opinion is actually dated the very same day, January 15, 2020.  Understandably, the ALJ appears to have misread the handwritten date on the form's signature page, which is slightly obscured.  The first page of the form is date-stamped January 15, 2020, and Meketon's treatment notes indicate that he completed the form on January 15, 2020.  (*See* Tr. 536.)

consistency, and therefore the ALJ's finding that Meketon's opinion is "not persuasive" was not supported by substantial evidence as it was not reached based upon a correct application of the relevant law. Indeed, the plaintiff is correct that the ALJ's explanation uses the word "support" only—it does not explicitly reference consistency. But an ALJ is not required to "chant every single magic word correctly [in] an otherwise thorough and well-reasoned opinion." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200 (3d Cir. 2019) (internal quotation marks omitted); *see also Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022) ("The ALJ need not use the magic words of 'supportability' and 'consistency' but it must be clear they were addressed."); *Hubbard v. Comm'r of Soc. Sec.*, Civil Action No. 4:21-cv-160JMV, 2022 WL 1538650, at *4 (N.D. Miss. May 16, 2022) ("while the ALJ did not use the 'magic words,' she included details in her opinion related to the lack of supportability and consistency of the opinions . . . ."); *Lebeouf v. Saul*, Case. No. 1:19-cv-00201-BAM, 2020 WL 5702240, at *10 (E.D. Cal. Sept. 24, 2020) ("An ALJ need not recite any magic words to reject a physician's opinion where the record reveals specific legitimate inferences that may be drawn from the ALJ's opinion justifying the

decision not to adopt a physician's opinion.").

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency, and he expressly articulated his findings on the supportability and consistency of the opinions even if he failed to expressly use the term "consistency." The term "supportability" concerns "the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion []." *See* 20 C.F.R. § 404.1520c(c)(1). In assessing Meketon's opinion, the ALJ referenced and relied on Meketon's own objective findings that same day, as well as the other objective findings discussed in the ALJ's decision. (Tr. 20). The term "consistency" on the other hand, concerns a comparison with "evidence from other medical sources and non-medical sources." *See* 20 C.F.R. § 404.1520c(c)(2). Although couched in terms of whether that evidence from other medical sources "supported" Meketon's opinion, it is clear that the ALJ here considered the Meketon opinion's lack of consistency with evidence from Dr. Trogner, Nurse Hanes, and the other treatment evidence discussed in the ALJ's written decision. (Tr. 20). Thus, we find the ALJ properly considered the required factor of consistency.

Accordingly, we find the ALJ's evaluation of the opinion of Michael Meketon, LCSW, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Shirley was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: August 3, 2022